# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHAD AUSTIN, | * | |
| Petitioner | * | |
| v. | * | Civil Action No. PWG-17-2581 |
| TIMOTHY STEWART, Warden, | * | |
| Respondent | * | |

## MEMORANDUM OPINION

Following a crime spree on February 11, 1998 that started in New Hampshire and ended in Massachusetts, Petitioner Chad Austin was indicted, convicted, and sentenced first in Massachusetts state court and then in federal court in New Hampshire of crimes arising out of his conduct that day. His federal sentence was, in part, concurrent to and, in part, consecutive to his state sentence. His state sentence was vacated in part on October 25, 2006, and he was resentenced on all counts in state court. In Austin's view, in light of the state court order vacating his state court sentence, his consecutive federal sentences began to run at soon as his concurrent federal sentences concluded, such that he should be released immediately. He has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on that basis. ECF No. 1. Respondent, the Warden of FCI-Cumberland, where Austin is confined, has filed a Motion to Dismiss or, Alternatively, for Summary Judgment, ECF No. 4.[1] Because the state court never relinquished jurisdiction when it resentenced him, Austin's consecutive federal sentence did not begin until October 28, 2016, when he completed his state sentence and the State of Massachusetts released him to Federal Bureau of Prisons ("BOP") custody. Accordingly, I will

---

[1] Respondent filed a Memorandum in Support, ECF No. 4-1, and Austin filed an Opposition, ECF No. 6. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2016).

grant Respondent's Motion, construed as a motion for summary judgment, and deny Austin's Petition.

**Background**

On February 11, 1998, Austin stole a car in New Hampshire and robbed a New Hampshire bank at gunpoint. *United States v. Austin*, 239 F.3d 1, 2 (1st Cir. 2001). He fled by car into Massachusetts with two pillowcases full of cash, firing at the New Hampshire police officer and then Massachusetts police officers who pursued him in a high-speed chase. *Id.* at 2–3. After crashing the car, he continued to flee on foot, eventually entering a house by force and holding the two 4-year-old boys in the home and their father hostage for hours before the Massachusetts police successfully took him into custody. *Id.* at 3.

Austin was sentenced in Massachusetts state court on November 4, 1998 to a 30–40 year term of imprisonment for each of three counts of armed home invasion, and received concurrent, shorter sentences for other state crimes stemming from this course of events. *Id.*; *Commonwealth v. Austin*, No. 98-403, slip op. at 1–2 (Mass. Sup. Ct. Oct. 25, 2006), ECF No. 1-8. He was brought into federal custody on November 17, 1998 pursuant to a writ of habeas corpus *ad prosequendum* while he was in state custody. Giddings Decl. ¶ 4, ECF No. 4-2. In the United States District Court for the District of New Hampshire, he was convicted of bank robbery, use of a firearm during a crime of violence, possession of a firearm by a prohibited person, and interstate transportation of stolen property and a stolen motor vehicle. *Id.* ¶ 5; *Austin*, 239 F.3d at 3. On November 12, 1999, the New Hampshire federal court sentenced him to 175 months of imprisonment for those crimes. Jmt., ECF No. 4-2, at 24–27; *Austin*, 239 F.3d at 4.

At sentencing, the New Hampshire federal court stated that it was "the Court's intent to impose a sentence that will effectively require the defendant to serve an additional ten years of imprisonment consecutive to the term imposed by Massachusetts, which is a 30-year to 40-year sentence." Hr'g Tr. Part 3, at 51:8–13, ECF No. 1-4.  The court ruled:

> The Court intends to impose sentence as follows: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of this Court that the defendant, Chad E. Austin, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 175 months **on Count 1, 60 months to be served consecutively** and 115 months to be served concurrently, and a term of 120 months on each of Counts 3, 4, and 5, all such terms as to Counts 3, 4, and 5 to be served concurrently with each other and effective this date with the Massachusetts state sentence now being served.
>
> It is further ordered that the defendant is hereby committed to the Bureau of Prisons to be imprisoned for a term of **60 months on Count 2, said sentence to be served consecutively to the instant federal sentence and any other sentence being served by this defendant, particularly the Massachusetts sentence he's now currently serving**.

Hr'g Tr. Part 2, at 46:20–47:13, ECF No. 1-3 (emphasis added).  It reiterated that the sentence "*would be ten years consecutive*, the rest concurrent with each other and with the other federal sentences on the different counts and with the state sentence." Hr'g Tr. Part 3, at 52:8–11 (emphasis added).  The court then "impose[d] the sentence as announced." *Id*. at 52:15; *see also* Jmt., ECF No. 4-2, at 24–27.  Thus, 60 months of the sentence imposed for Count 1 were to be consecutive to the state sentence, and 60 months of the sentence imposed for Count 2 were to be consecutive to the federal sentence on the other counts, as well as consecutive to the state sentence, for a total of 120 months (ten years) to be served consecutive to the federal sentence. Hr'g Tr. Part 2, at 46:20–47:13; Jmt.  Five days after his federal sentencing, on November 17, 1999, Austin returned to state custody to serve the remainder of his state sentence.  Giddings Decl. ¶ 6.

Austin appealed his federal sentence, and the First Circuit affirmed in part, concluding that the enhancements to Count One (which Austin challenged as duplicative) were appropriate.

3

*Id.* at 4–5. It also concluded that "the district court did not err in applying U.S.S.G. § 5G1.3(c)," which allowed the court to impose a partially-consecutive sentence, unlike U.S.S.G. § 5G1.3(b), which would have required a sentence that ran "concurrently with his undischarged state term" if the "federal sentence fully took into account conduct that formed the basis of his Massachusetts sentence." *Id.* at 4–5, 7. The First Circuit also vacated in part and remanded for resentencing, holding that the sentencing court erred in aggregating the value of the stolen car and the stolen cash pursuant to U.S.S.G. § 2B3.1(b)(7) and applying a one-level enhancement. *Id.* at 8.

The New Hampshire federal court resentenced Austin and, on April 2, 2001, it issued an Amended Judgment, modifying the total months of imprisonment to 222. Am. Jmt., ECF No. 4-2, at 35–38. The Amended Judgment stated that, "[o]n Count 1, 102 months," as opposed to the 115 months originally imposed, "shall be served concurrently with" the state sentence; it did not modify any other terms. *Id.* Thus, even as amended, 60 months of the sentence imposed for Count 1 were to be consecutive to the state sentence, and 60 months of the sentence imposed for Count 2 were to be consecutive to the federal sentence on the other counts, as well as consecutive to the state sentence, for a total of 120 months (ten years) to be served consecutive to the federal sentence. *Id.*

Austin also challenged his state court sentence, and the state court ruled on October 25, 2006 that the relevant state statute pertaining to armed home invasion, in effect at the time Austin was convicted and sentenced, provided for a minimum of 10 and a maximum of 20 years of imprisonment, whereas Austin was sentenced to 30–40 years of imprisonment on each of the three armed home invasion counts, under an outdated provision. *Austin*, No. 98-403, slip op. at 1–2, 4. The court stated that, with regard to the home invasion counts, Austin's "sentences must be vacated and he must be re-sentenced," and that it would "not limit Austin's re-sentencing to

4

the armed home invasion convictions" because "[t]he governing sentences imposed for these lead charges influenced this court's decision as to both the length and the concurrent nature of the sentences imposed on the other convictions." *Id*. at 4. The state court resentenced Austin on December 27, 2006 to a total of 19 to 20 years of imprisonment on one of the home invasion counts and to shorter, concurrent sentences on each of the other counts, with credit for 3,241 days served. *Id.* Nos. 159–67.

Thereafter, Austin filed an unsuccessful motion to correct illegal sentence in the New Hampshire federal court, seeking a reduction in his federal sentence based on the reduction in his state court sentence. Order (D.N.H. Apr. 29, 2013), ECF No. 4-2, at 45. He also filed a letter, seeking an explanation of how his federal sentence was calculated, and the Deputy Chief Probation Officer, at the court's request, provided a response. Apr. 4, 2014 Mem., ECF No. 4-2, at 50. He stated that "the Court intended that the defendant serve a period of 10 years incarceration in federal prison that was consecutive to the sentence the defendant received in the Commonwealth of Massachusetts." *Id*. (citing Am. Jmt.; Hr'g Tr. 52). He also explained that "the reduction of the defendant's sentence in the Commonwealth of Massachusetts does not alter his federal sentence; he will commence service of his federal term of imprisonment upon completion of his state sentence. *Id.*

Austin completed his state sentence on October 28, 2016, and the State of Massachusetts released him to Federal BOP custody to serve the 120 months of his federal sentence that were to run consecutive to his state sentence. Giddings Decl. ¶ 14. He had served from February 11, 1998 to October 28, 2016 in state custody. *Id.*

The BOP calculated Austin's federal sentence as having begun on June 2, 2009, such that he had served 102 months of it concurrently with his state sentence. Giddings Decl. ¶ 15. The

5

remainder of his federal sentence, 120 months, began on the date Austin was released from state custody, October 28, 2016. *Id.* Austin currently is incarcerated at Federal Correctional Institution Cumberland ("FCI-Cumberland"). *Id.* ¶ 1. His projected release date is July 14, 2025, through application of good conduct time. *Id.* ¶ 16.

## Standard of Review

The Federal Rules of Civil Procedure apply to federal habeas corpus proceedings to the extent they are not inconsistent with any statutory provisions or the rules governing such proceedings. Rules Governing § 2254 Cases,[2] Rule 12. Respondent filed his motion as one, in the alternative, for summary judgment, and submitted evidence for the Court's review; Austin also submitted evidence and has not requested an opportunity for discovery; and I will consider the evidence in my analysis. Accordingly, the motion is construed properly as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013); *Ridgell v. Astrue*, No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to

---

[2] The district court may apply any or all of the rules governing § 2254 petitions to any habeas corpus petition that does not concern a challenge to custody pursuant to a state-court judgment. Rules Governing § 2254 Cases, Rule 1(a).

the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* The Court considers the undisputed facts, and to the extent there is a genuine dispute of material fact, "this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*, No. RDB-12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

**Analysis**

Austin argues that, because his state sentences were vacated, his consecutive federal sentences began to run when he had completed his concurrent federal sentences (which began when he was sentenced in federal court on November 12, 1999), such that he now has served all of his sentences and should be released immediately. Pet'r's Mem. 1–2, 5; Pet. 12, 15. As he sees it, when he was resentenced in state court on December 27, 2006 to serve 19 to 20 years, his federal sentences "r[a]n parallel" to the newly-imposed state sentences because he "was NEVER called back to federal court so [the sentencing judge] could amend the [federal] sentences [in light of] the new State ones." Pet. 12. What Austin overlooks, however, is that while his original state *sentence* was vacated (leading to a resentencing) his underlying state *conviction* was not vacated, and he continued to be held in state custody until he finished serving the time imposed by the resentencing. Only then was he relinquished to federal custody to begin serving the consecutive portion of his federal sentence. As discussed below, this distinction is critical.

Misconstruing Austin's argument to be that "the state and federal sentences were meant to run entirely concurrently," Respondent argues that "the federal sentencing court was clear that ten years of the federal sentence were to run consecutively to the state sentence." Resp.'s Mem. 7. Yet, Respondent correctly notes, *id.* at 8, that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served," 18 U.S.C. § 3585(a).

When "an inmate has sentences imposed by federal and state authorities, the sovereign that arrested him first"—here, Massachusetts—"acquires and maintains primary jurisdiction over him until the sentence imposed by that sovereign has been satisfied." *Dickens v. Stewart*, No. DKC 13-0795, 2014 WL 858977, at *2 (D. Md. Mar. 4, 2014) (citing *United States v. Evans,* 159 F.3d 908, 912 (4th Cir. 1998)). Thus, when, as here, "a state maintains primary jurisdiction over a defendant, federal custody under a federal criminal sentence 'commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.'" *Id.* (quoting *Evans,* 159 F.3d at 912). This is because "[a] federal sentence does not commence until the Attorney General receives the defendant into her 'custody' for service of that sentence," unless "the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence." *Evans*, 159 F.3d at 911–12 (citing 18 U.S.C. § 3585(a)). To relinquish or waive primary jurisdiction, a state may "deliver [the prisoner] into federal custody for the purpose of beginning his federal sentence." *Trowell v. Beeler*, 135 F. App'x 590, 594 (4th Cir. 2005).

Thus, contrary to Austin's assertion that he began serving his federal sentence when the state court vacated his state sentence, he did not begin serving his federal sentence until he

entered federal custody. *See* 18 U.S.C. § 3585(a); *Papadapoulos v. Johns*, No. 09-HC-2009-FL, 2011 WL 1104136, at *6 (E.D.N.C. Mar. 22, 2011). In *Papadapoulos*, the petitioner, like Austin, sought habeas relief, arguing that "his federal sentence began . . . when his . . . state court sentence was vacated." 2011 WL 1104136, at *6. The federal court observed that, "[a]lthough petitioner's sentence was vacated, his underlying conviction was not." *Id.* There, also, the petitioner was resentenced in state court, and "[t]he language of the Georgia state court's orders resentencing petitioner ma[d]e clear that he still was in state custody serving his state sentence until he was released from state custody on May 6, 2004." The court held that, "[b]ecause petitioner's state and federal sentences ran consecutively, his federal sentence did not commence until May 6, 2004, the date he was released from his Georgia state sentence." *Id.*

Notably, Austin's state court conviction was not vacated with his sentence in October 2006, and he remained in state custody pending his resentencing in December 2006. He was not delivered to the Federal BOP until the State of Massachusetts released him on October 28, 2016. Therefore, his consecutive federal sentence did not begin until October 28, 2016. *See Evans,* 159 F.3d at 912; *Papadapoulos*, 2011 WL 1104136, at *6; *Batts v. Masters*, No. 14-19307, 2015 WL 1893951, at *7 (S.D.W. Va. Feb. 4, 2015) (finding that "the State retained primary jurisdiction over Petitioner until . . . the day Petitioner satisfied his State sentences" even though the state court granted his appeal, his case was remanded for a new trial, and he was convicted and resentenced, because "there [was] no indication that the State relinquished its primary jurisdiction by granting Petitioner's appeal"), *report and recommendation adopted,* No. 14-19307, 2015 WL 1897160 (S.D.W. Va. Apr. 27, 2015). On the undisputed facts before me, Austin's sentence was properly computed and Respondent is entitled to judgment as a matter of law. I will deny Austin's Petition.

A separate Order follows.

May 10, 2018  /S/
Date  Paul W. Grimm
 United States District Judge